| | |
|---|---|
| District Court of Arapahoe County, Colorado<br>7325 S. Potomac Street<br>Centennial, CO 80112 | DATE FILED: October 26, 2020 5:43 PM<br>FILING ID: 2B543DC8D1C38<br>CASE NUMBER: 2020CV32078 |
| Plaintiff: USIC LOCATING SERVICES, LLC<br><br>v.<br><br>Defendant: PROJECT RESOURCES GROUP, INC. | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br><br>Peter S. Gould (Atty. Reg. #: 34089)<br>Matthew C. Cooper (Atty. Reg. #: 41552)<br>SQUIRE PATTON BOGGS (US) LLP<br>1801 California Street, Suite 4900<br>Denver, CO 80202<br>Phone: (303) 830-1776<br>Facsimile: (303) 894-9239<br>Email: peter.gould@squirepb.com<br>Email: matthew.cooper@squirepb.com<br><br>David B. Helms (*Pro Hac Vice Pending*)<br>Benjamin D. Mooneyham (*Pro Hac Vice Pending*)<br>GM Law PC<br>8000 Maryland Avenue, Suite 1060<br>St. Louis, MO 63105<br>1201 Walnut, Suite 2000<br>Kansas City, MO 64106<br>Email: davidh@gmlawpc.com<br>Email: benm@gmlawpc.com | Case Number:<br><br>Division:       Courtroom: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT: <u>PROJECT RESOURCES GROUP, INC.</u>**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached COMPLAINT AND JURY DEMAND ("Complaint"). If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint and Jury Demand in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint and Jury Demand without further notice.

The following documents are also served with this summons:

1. District Court Civil (CV) Case Cover Sheet for Complaint and Jury Demand.
2. Complaint and Jury Demand.

Dated: October 26, 2020.

/s/ Matthew C. Cooper
Peter S. Gould (Atty. Reg. #: 34089)
Matthew C. Cooper (Atty. Reg. #: 41552)
SQUIRE PATTON BOGGS (US) LLP
1801 California Street, Suite 4900
Denver, CO 80202
Phone: (303) 830-1776
Facsimile: (303) 894-9239
Email: peter.gould@squirepb.com
Email: matthew.cooper@squirepb.com

David B. Helms (*Pro Hac Vice Pending*)
Benjamin D. Mooneyham (*Pro Hac Vice Pending*)
GM Law PC
8000 Maryland Avenue, Suite 1060
St. Louis, MO 63105
1201 Walnut, Suite 2000
Kansas City, MO 64106
Email: davidh@gmlawpc.com
Email: benm@gmlawpc.com

*Attorneys for Plaintiff*

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint and Jury Demand must be served with this Summons. This form should not be used where service by publication is desired.**

Plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If Plaintiff files the case within this time, then you must respond as explained in this summons.

JDF 600   R10-13   DISTRICT COURT CIVIL SUMMONS

**EXHIBIT A**
**Page 2 of 25**

| District Court of Arapahoe County, Colorado<br>7325 S. Potomac Street<br>Centennial, CO 80112 | |
|---|---|
| DATE FILED: October 26, 2020 5:43 PM<br>FILING ID: 2B543DC8D1C38<br>CASE NUMBER: 2020CV32078 | |
| Plaintiff: USIC LOCATING SERVICES, LLC<br><br>v.<br><br>Defendant: PROJECT RESOURCES GROUP, INC. | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br><br>Peter S. Gould (Atty. Reg. #: 34089)<br>Matthew C. Cooper (Atty. Reg. #: 41552)<br>SQUIRE PATTON BOGGS (US) LLP<br>1801 California Street, Suite 4900<br>Denver, CO 80202<br>Phone: (303) 830-1776<br>Facsimile: (303) 894-9239<br>Email: peter.gould@squirepb.com<br>Email: matthew.cooper@squirepb.com<br><br>David B. Helms (*Pro Hac Vice Pending*)<br>Benjamin D. Mooneyham (*Pro Hac Vice Pending*)<br>GM Law PC<br>8000 Maryland Avenue, Suite 1060<br>St. Louis, MO 63105<br>1201 Walnut, Suite 2000<br>Kansas City, MO 64106<br>Email: davidh@gmlawpc.com<br>Email: benm@gmlawpc.com | Case Number:<br><br>Division:        Courtroom: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR<br>COMPLAINT AND JURY DEMAND** | |

1.  This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2.  Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

    ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

JDF 601SC  R09-18  DISTRICT COURT CIVIL (CV) CASE COVER SHEET

**X** This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

**Or**

☐  Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.   **X** This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date:** October 26, 2020

/s/ Matthew C. Cooper
Peter S. Gould (Atty. Reg. #: 34089)
Matthew C. Cooper (Atty. Reg. #: 41552)
SQUIRE PATTON BOGGS (US) LLP
1801 California Street, Suite 4900
Denver, CO 80202
Phone: (303) 830-1776
Facsimile: (303) 894-9239
Email: peter.gould@squirepb.com
Email: matthew.cooper@squirepb.com

David B. Helms (*Pro Hac Vice Pending*)
Benjamin D. Mooneyham (*Pro Hac Vice Pending*)
GM Law PC
8000 Maryland Avenue, Suite 1060
St. Louis, MO 63105
1201 Walnut, Suite 2000
Kansas City, MO 64106
Email: davidh@gmlawpc.com
Email: benm@gmlawpc.com

*Attorneys for Plaintiff*

| District Court of Arapahoe County, Colorado<br>7325 S. Potomac Street<br>Centennial, CO 80112 | |
|---|---|
| | DATE FILED: October 26, 2020 5:43 PM<br>FILING ID: 2B543DC8D1C38<br>CASE NUMBER: 2020CV32078 |
| Plaintiff: USIC LOCATING SERVICES, LLC<br><br>v.<br><br>Defendant: PROJECT RESOURCES GROUP, INC. | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff: | Case Number:<br><br>Division:       Courtroom: |
| Peter S. Gould (Atty. Reg. #: 34089)<br>Matthew C. Cooper (Atty. Reg. #: 41552)<br>SQUIRE PATTON BOGGS (US) LLP<br>1801 California Street, Suite 4900<br>Denver, CO 80202<br>Phone: (303) 830-1776<br>Facsimile: (303) 894-9239<br>Email: peter.gould@squirepb.com<br>Email: matthew.cooper@squirepb.com<br><br>David B. Helms (*Pro Hac Vice Pending*)<br>Benjamin D. Mooneyham (*Pro Hac Vice Pending*)<br>GM Law PC<br>8000 Maryland Avenue, Suite 1060<br>St. Louis, MO 63105<br>1201 Walnut, Suite 2000<br>Kansas City, MO 64106<br>Email: davidh@gmlawpc.com<br>Email: benm@gmlawpc.com | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff USIC Locating Services, LLC ("USIC"), by and through undersigned counsel,

files this Complaint against Defendant Project Resources Group, Inc. ("PRG") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      USIC is a limited liability company organized under the laws of Delaware. Its sole

member is USIC, LLC, a limited liability company organized under the laws of Delaware. USIC,

LLC's sole member is USIC Holdings, Inc., a Delaware corporation with its principal place of

business in Indianapolis, Indiana. USIC has offices and performs business operations in the State of Colorado.

2.      PRG is a Colorado corporation with its principal place of business in 5340 S Quebec St, Suite 250S, Greenwood Village, CO 80111.

3.      This Court has subject-matter jurisdiction pursuant to Article VI, Section 9, of the Colorado Constitution.

4.      This Court has personal jurisdiction over PRG because PRG is a Colorado corporation that has its principal place of business in the State of Colorado.

5.      Venue is appropriate in Arapahoe County pursuant to Colo. R. Civ. P. 98(c) because PRG resides in Arapahoe County.

<strong>FACTUAL ALLEGATIONS</strong>

6.      Throughout the country, states have established "One Call" notification centers (including Colorado 811) to facilitate safe excavation around utilities.

7.      Public utility owners have a legal obligation to locate and mark the approximate location of their underground utility lines when they receive requests through a state's One Call notification center.

8.      Instead of employing individuals to mark their lines in response to every 811 request, many utility companies contract with a third-party company like USIC to perform the location services. Thus, USIC contracts with many utility owners ("Customers") across the country to locate and mark the Customers' underground utility lines in response to One Call (or 811) requests.

9.      USIC is the leading provider of underground utility locating and damage prevention services in the United States, performing over 70 million "locates" annually.

Page 2 of 15

<strong>EXHIBIT A<br>Page 6 of 25</strong>

10.     USIC, its Customers, and excavators all understand that excavation poses risks of damage to underground utility facilities, and USIC works together with its Customers and excavators to avoid such damage to the greatest extent possible.

11.     Damage to underground facilities can arise from any number of sources, which include but are not limited to failure to request locates before excavating, unlocateable facilities, errors in identifying and marking underground facilities, errors and omissions in the Customer's prints and maps relating to its underground facilities, acts or omissions by an excavator or other third party, and failures of communication or coordination between the various individuals or entities involved in a planned excavation.

12.     Given the extremely high volume of locate requests handled by USIC for its Customers each year and the risks related to excavation, USIC has been involved in a number of locate requests for excavation that ultimately resulted in an underground facility being damaged, whether or not due to any fault of USIC. These will hereafter be referred to as "Claims."

13.     When Claims arise, USIC works together with the Customer to identify the cause and extent of the damage.  In certain instances, USIC agrees to reimburse the Customer for the cost to repair the damaged facility.  As a general rule, USIC does not agree, nor is it obligated, to pay the Customer more than the actual cost to repair the damaged facility for each Claim.

14.     Some of USIC's Customers have hired PRG as a third-party administrator to help the Customer handle its Claims against USIC.  PRG processes invoices for the Customer and submits them to USIC for payment.  PRG also acts akin to a debt collector in pursuing collection of any payments.

15.     PRG has submitted well over 6,000 Claims to USIC over the last few years, involving over $14 million in claimed damages.

16.     Given the volume of claims USIC receives each year for damages stemming from over 70 million locates annually and the established relationship it has with its Customers (locate contracts often last several years), USIC has generally paid the invoices submitted by PRG in reasonable reliance that PRG is charging USIC in a manner consistent with the actual costs to repair the damaged facility for each Claim.

17.     PRG holds itself out as a third-party administrator working on behalf of a particular Customer, seeking only to collect from USIC the money due to the Customer.

18.     Rather than invoice USIC according to the actual costs to repair the facility damage for each Claim, however, USIC has learned that PRG systematically has been inflating the charges included on the invoices in an effort to deceive USIC into paying higher amounts.

19.     In many instances, the amount that PRG charges to USIC in its invoice greatly exceeds the amount charged by the party who contracted with the Customer to repair the facility damage for a given Claim ("Contractor's invoice").  PRG attempts to disguise its overcharging by withholding full information or providing misinformation about the Claims.

20.     PRG has utilized a variety of different approaches in falsifying its charges to USIC. By way of example only, PRG has submitted invoices to USIC that misrepresent the number or types of trucks and/or technicians the Contractor utilized in repairing the facility damage on a Claim, the amount of time such trucks or technicians were utilized by the Contractor, and/or the rates the Contractor charged for the materials utilized in repairing the facility damage. In other instances, PRG adds certain line items to invoices such as "emergency call out" charges or damage investigation fees that are not reflected in the Contractor's invoice or the Customer's actual costs. Additionally, on information and belief PRG uses an internal system that adds a certain percentage inflation on its invoices to USIC, based on the Customer represented and the amount of the Claim,

regardless of the actual work performed in connection with the Claim. It utilized these tactics in an effort to charge higher rates for work than what was incurred by the Customer, or to collect amounts for work that was not actually performed.

21.     PRG apparently justifies this improper inflation as a means of covering the fees PRG allegedly incurs in providing its services to the Customer.

22.     PRG knows, however, that it is not entitled to collect from USIC the fees it incurs in conjunction with performing services for the Customer.

23.     As a result, rather than conspicuously attaching such fees to its invoices, PRG instead inflates the rates charged for other line items in the invoices. This false billing practice has the effect of keeping PRG's own fees hidden from the invoice, depriving USIC of the opportunity to "write off" such fees as being beyond USIC's responsibility. Through this practice, PRG has induced USIC to pay PRG more than the total amount PRG is entitled to collect from USIC on each Claim.

24.     Periodically, USIC has requested that PRG provide supporting documentation for Claims such as the Contractor's invoice, but PRG does not always provide the requested documentation.

25.     As a specific example of PRG's false billing practices, on or around April 22, 2020, PRG employee Craig Lewis submitted an invoice to USIC employees Tiffany Ellis and Anthony Mitchell. A comparison between the invoice submitted by PRG and the Contractor's invoice revealed that the alleged cost of materials on PRG's invoice was $1580.67 but the actual cost of materials on the Contractor's invoice was $1346.59, an increase of over 17%.

26.     As a further specific example of PRG's false billing practices, on or around June 18, 2020, PRG submitted an invoice to USIC for $1,866.66. Thereafter, on or around September

26, 2020, PRG submitted a revised invoice to USIC for $2,888.96. The revised invoice increased the amounts charged for certain of the line items included on the original invoice, but PRG did not provide USIC documentation in support of such increased amounts. The difference between the revised invoice and the original invoice in this instance was $1,022.30, representing a nearly 55% increase.

27.     PRG also has created internal documents called "cheat sheets" which are used by PRG representatives to gauge how much to inflate bills pertaining to various Customers.

28.     As demonstrated by the specific examples referenced above, PRG has engaged in a pattern and practice of fraudulent, misleading, and wrongful conduct by way of its overinflated and false billing practices.

29.     Given the multitude of different approaches that PRG has employed, including but not limited to the specific examples described above, and the volume of Claims being processed, USIC has been unable, by reasonable diligence, to discover facts necessary to determine the full extent and scope of PRG's false billing practices. Such information lies uniquely within PRG's own knowledge.

30.     To the extent USIC has been able to conduct an investigation of PRG's false billing practices, the investigation shows that PRG has submitted falsified invoices to USIC with respect to paid invoices. On information and belief, PRG has utilized this pattern and practice of false billing on all or a majority of its invoices to USIC.

31.     PRG has deceived and misled USIC into paying much higher damage amounts on Claims than the actual costs. Additionally, PRG's deceptive business practices have caused USIC to expend significant time, money, and resources to investigate the nature of the Claims and invoices and negotiate with PRG regarding the proper amount of money owed.

32.      PRG utilized deceptive practices and fraudulent concealment of the nature of its upcharges to prevent USIC from learning about them sooner by, among other things, selectively increasing certain line item costs that were difficult to validate, using inflated estimates rather than actual invoices, and adding new line-item charges that did not reflect the actual costs to the Customer.

33.      USIC is not aware of the identity of the particular PRG employee(s) who prepared and submitted each invoice to USIC, as that information is uniquely in PRG's knowledge.

34.      The amount USIC has paid PRG pursuant to invoices that PRG has processed on behalf of Customers is substantial.  For example, between 2018 and September 6, 2020, USIC has paid PRG approximately $13,658,000.00 for invoices generated by PRG on behalf of Customers.

35.      Because USIC has ongoing-multi-year contracts with most of its Customers and no control over whether those Customers use PRG as a third-party administrator for Claims, the damage to USIC will continue to grow each year unless PRG is enjoined from utilizing its deceptive, fraudulent, and unfair business practices.

**COUNT I – FALSE REPRESENTATION / FRAUDULENT MISREPRESENTATION**

36.      USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

37.      As detailed above, in falsified invoices, PRG made knowingly false representations to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices and concealed hidden fees that PRG was not entitled to recover.

38.      PRG also has omitted, either through concealment or failure to disclose, material information from its invoices to USIC, including but not limited to the fact that it added hidden fees and charges that it had allegedly incurred for its own services to the Customer.

39.     These representations and omissions were material, and USIC relied upon them when paying the falsified invoices.

40.     PRG knew that the invoices were false and misleading when they were submitted to USIC and/or was aware that USIC did not know whether the representation was true or false.

41.     PRG intended that USIC rely on the false representations when paying the invoices and/or intended to create a false impression of the actual facts in the mind of USIC with the intent that USIC take a course of action it might not have taken if it knew the actual facts.

42.     USIC was ignorant as to the falsity of the representations in the invoices and relied on the invoices and false representation, and took action on the assumption that the facts were different that from what they actually were.

43.     USIC was reasonable and justified in its reliance that the invoices generated by PRG on behalf of Customers with whom USIC had long-term relationships would be accurate.

44.     USIC was damaged by its reliance on the false and misleading invoices, as it paid money and expended additional time and employee resources based on the misrepresentations therein in amounts to be determined at trial.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count I against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to the monies taken through the false billing.  On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

### COUNT II – NEGLIGENT MISREPRESENTATION

45.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

46.     As detailed above, in falsified invoices, PRG gave false information to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices and concealed hidden fees that PRG was not entitled to recover.

47.     PRG gave such false information through the course of its business related to transactions and for resolving the Claims in which USIC had a financial interest.

48.     PRG gave the false information to USIC for the guidance and/or use of USIC in a business transaction.

49.     PRG gave the false information to USIC without exercising reasonable care or competence to obtain and communicate the true information to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices, and was thus negligent in obtaining or communicating the information to USIC.

50.     These false representations were material, and USIC relied upon them when paying the falsified invoices.

51.     PRG gave the information with the intent or knowing that USIC would act in reliance on PRG's false information when paying the invoices.

52.     USIC did, in fact, rely on PRG's false information to its detriment.

53.     USIC was justified in its reasonable reliance that the false invoices generated by PRG on behalf of Customers with whom USIC had long-term relationships would be accurate.

54.     USIC was damaged by its reliance on the false and misleading invoices, as it paid money and expended additional time and employee resources based on the misrepresentations therein in amounts to be determined at trial.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count II against PRG and that the Court award USIC damages to compensate for its losses, including but not

limited to the monies taken through the false billing. On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

<strong>COUNT III – CONVERSION</strong>

55.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

56.     USIC owned, possessed, and had a right to possess certain monies related to its business operations.

57.     PRG intentionally and substantially interfered with USIC's ownership, possession, and right to possession of its monies when PRG obtained and took possession of the monies legally owned by USIC through generating invoices that were knowingly false and misleading. The invoices inflated the actual cost to repair the facility damage for the Claims reflected on the invoices and concealed hidden fees that PRG was not entitled to recover. PRG knew it did not have the right to the monies taken from USIC at the time of the false and misleading billings. PRG took the monies with the intent to permanently deprive USIC of the monies. By taking the monies from USIC, PRG deprived USIC of the right to the monies rightfully belonging to USIC and caused USIC to incur unnecessary time and expenses.

58.     USIC did not consent to PRG's interference.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count III against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to the monies taken through the false billing. On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

## COUNT IV – UNJUST ENRICHMENT

59.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

60.     PRG generated invoices that inflated the actual cost to repair the facility damage for the Claims reflected on the invoices and concealed hidden fees that PRG was not entitled to recover.

61.     By paying PRG the inflated amounts reflected in the inflated invoices, USIC bestowed a benefit on PRG, and PRG received the benefit at USIC's expense.

62.     It would be unjust and inequitable for PRG to retain the monies and benefit PRG received from USIC through the false billing, to the unfair detriment of USIC, without commensurate compensation to USIC.

        WHEREFORE, USIC prays that this Court enter judgment in its favor on Count IV against PRG and that the Court award USIC restitution on the amount by which PRG was unjustly enriched at the expense of USIC, including but not limited to the monies taken through the false billing.  On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

## COUNT V – CIVIL THEFT

63.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

64.     USIC owned, possessed, and had a right to ownership in certain monies related to its business operations.

65.     PRG intentionally, knowingly and by deception obtained control and possession of monies legally owned by USIC without authorization through generating invoices that were false

**EXHIBIT A**
**Page 15 of 25**

and misleading. The invoices inflated the actual cost to repair the facility damage for the Claims reflected on the invoices and concealed hidden fees that PRG was not entitled to recover.

66.     PRG knew it did not have the right to the monies taken from USIC at the time of the false and misleading billings, and PRG knowingly took the monies with the intent to, or in such a manner as to, permanently deprive USIC of the monies.

67.     By taking the monies from USIC, PRG deprived USIC of the right to the monies rightfully belonging to USIC.

68.     Pursuant to Colo. Rev. Stat. § 18-4-405 (or, in the alternative, Ind. Code § 35-43-5-3(a)(2)), USIC is entitled to three times its damages, including but not limited to three times the monies USIC paid PRG through the false billing, plus costs and attorney's fees.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count V against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to three times the monies USIC paid PRG through the false billing in accordance with Colo. Rev. Stat. § 18-4-405 or, in the alternative, Ind. Code § 35-43-5-3(a)(2). On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

### COUNT VI – VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT, Colo. Rev. Stat. §§ 6-1-101, *et seq.*

69.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

70.     PRG engaged in deceptive trade practices in violation of Colo. Rev. Stat. § 6-1-105.

71.     The deceptive trade practice occurred in the course of its business when, in falsified invoices, PRG knowingly or recklessly made false or misleading statements of fact from its

Colorado offices to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices and concealed hidden fees that PRG was not entitled to recover.

72.     USIC has been injured as a result of PRG's deceptive trade practices in the course of USIC's business and on behalf of Customers with whom USIC has a business relationship.

73.     USIC has suffered actual damages and losses as a result of PRG's deceptive trade practices in that USIC would not have paid the total amounts purportedly owed in the falsified invoices absent PRG's false or misleading statements therein, and USIC has expended additional time and employee resources to investigate PRG's invoices and negotiate with PRG regarding proper payment amounts.

74.     PRG's deceptive trade practices significantly impact the public as actual or potential consumers of PRG's services because PRG is a nationwide organization that recoups millions of dollars of utility property damage repair costs each year for its customers and, as a result, PRG's deceptive trade practices have a significant potential to affect the general public because its conduct impacts the cost to perform a statutorily required duty of utilities intended to protect the public's utility infrastructure and lives. As a result, utilities, all of which must have their facilities located, will incur additional locate expenses that ultimately will affect the cost that the public pays for all manner of essential utilities, including gas, electric, telephone, communications, sewer, and water. Furthermore, the excavation and damage prevention industry is a wide industry with thousands of participants whom PRG targets with its cost recovery services. The damage that USIC has suffered is not unique to USIC's relationship with PRG but is a feature of PRG's general pattern and practice of false billing.  It is extremely likely that other businesses have suffered and will suffer similar injuries through PRG's deceptive practices, which will further increase the cost of utilities to the public.

75.     PRG's acts and representations constitute bad faith conduct within the meaning of Colo. Rev. Stat. Ann. § 6-1-113, as it was fraudulent, willful, knowing, and/or intentional conduct that caused injury to USIC.

76.     Pursuant to Colo. Rev. Stat. § 6-1-113, USIC is entitled to recover an amount equal to three times its actual damages, including but not limited to three times the monies USIC paid PRG through the false billing, and reasonable attorney's fees and costs.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count VI against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to three times the monies USIC paid PRG through the inflated billing in accordance with Colo. Rev. Stat. § 6-1-113. On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Pursuant to Colo. R. Civ. P. 38, USIC hereby requests a jury trial on all issues so triable and has paid the applicable fee.

Dated this 26th day of October, 2020.

/s/ Matthew C. Cooper
Peter S. Gould (Atty. Reg. #: 34089)
Matthew C. Cooper (Atty. Reg. #: 41552)
SQUIRE PATTON BOGGS (US) LLP
1801 California Street, Suite 4900
Denver, CO 80202
Phone: (303) 830-1776
Facsimile: (303) 894-9239
Email: peter.gould@squirepb.com
Email: matthew.cooper@squirepb.com

David B. Helms (*Pro Hac Vice Pending*)
Benjamin D. Mooneyham (*Pro Hac Vice Pending*)

Page 14 of 15

GM Law PC
8000 Maryland Avenue, Suite 1060
St. Louis, MO 63105
1201 Walnut, Suite 2000
Kansas City, MO 64106
Email: davidh@gmlawpc.com
Email: benm@gmlawpc.com

*Attorneys for Plaintiff*

| DISTRICT COURT<br>ARAPAHOE COUNTY, COLORADO<br>Arapahoe County Justice Center<br>7325 S. Potomac St.<br>Centennial, CO 80112<br><br>DATE FILED: October 27, 2020 8:30 AM<br>CASE NUMBER: 2020CV32078 | ▲ COURT USE ONLY ▲ |
|---|---|
| Plaintiff(s): USIC Locating Services LLC<br><br>v.<br><br>Defendant(s): Project Resources Group Inc | Case Number: 20CV32078<br><br>Division: 21 |

**DELAY REDUCTION ORDER**

(FOR CASES FILED ON OR AFTER JULY 1, 2015)

This Court is on a delay reduction docket.

    A.    For all civil actions, the following deadlines must be met:

        1.    <u>Service of Process</u>:  Returns of service on all defendants shall be filed within 63 days after the date of the filing of the complaint.

        2.    <u>Default Judgment</u>:  Application for default judgment shall be filed within 35 days after default has occurred.

        3.    <u>Trial Setting</u>:

            a.    For actions governed by C.R.C.P. 16, the trial shall be set at the case management conference.  Pursuant to C.R.C.P. 16(d)(1), the case management conference shall be held no later than 49 days after the case is at issue. The responsible attorney shall file and serve a notice to set the case management conference no later than 7 days after the case is at issue. The proposed case management order is due no later than 7 days prior to the conference.

                i.    "The responsible attorney" shall mean plaintiff's counsel, if the plaintiff is represented by counsel, or if not, the defense counsel who first enters an appearance in the case.

                ii.    A case shall be deemed at issue when all parties have been served and all pleadings permitted by C.R.C.P. 7 have been filed or defaults or dismissals have been entered against all non-appearing parties, or at such other time as the Court may direct.

            b.    For actions governed by Simplified Procedure under C.R.C.P. 16.1, the responsible attorney shall set the case for trial pursuant to C.R.C.P. 121, 1-6 no later than 42 days after the case is at issue, unless otherwise ordered by the Court.

**EXHIBIT A**
**Page 20 of 25**

      i.  "The responsible attorney" shall mean plaintiff's counsel, if the plaintiff is represented by counsel, or if not, the defense counsel who first enters an appearance in the case.

      ii.  A case shall be deemed at issue when all parties have been served and all pleadings permitted by C.R.C.P. 7 have been filed or defaults or dismissal have been entered against all non-appearing parties, or at such other time as the Court may direct.

B.    A District Court Civil Cover Sheet (JDF 601) shall be filed with all civil complaints.

C.    Plaintiff shall send a copy of this Order to all other parties who enter an appearance, and shall file a certificate of mailing within 14 days following the entry of appearance.

D.    Any attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case a document entitled "Information Regarding Case(s)" informing the Court of the related case(s) and stating whether consolidation is appropriate.

E.    If an attorney or pro se party fails to comply with this Order, the Court may dismiss the case without prejudice.

Date:  10/27/2020

BY THE COURT:
ASSIGNED JUDGE

-2-

**EXHIBIT A**
**Page 21 of 25**

| DISTRICT COURT<br>ARAPAHOE COUNTY, COLORADO<br>Arapahoe County Justice Center<br>7325 S. Potomac St.<br>Centennial, CO 80112 | ▲ COURT USE ONLY ▲ |
|---|---|
| Plaintiff(s):<br><br>v.<br><br>Defendant(s): | Case Number:<br><br>Division: |

### ORDER REGARDING PLAN FOR SETTLEMENT PURSUANT TO C.R.C.P. 16(b)(7) and C.R.S. §§ 13-22-311, 313

The following Orders apply to this case.

1. This Order applies to all civil cases filed at this Court.

2. No later than 35 days after the case is at issue, the parties shall explore the possibility of a prompt settlement or resolution of the case.

3. No later than 42 days after the case is at issue, the parties shall submit a document entitled "Stipulated Plan Regarding Settlement" setting forth their plans for future efforts to settle the case to the Court. Unless notified otherwise by the Court, the Stipulated Plan Regarding Settlement is automatically adopted as an Order of the Court.

   The Stipulated Plan Regarding Settlement (ADR Plan) must include the following:

   a. Specification of the selected form of ADR. The parties may select any form of ADR defined in C.R.S. § 13-22-302.

   b. Designation of a provider who has been contacted and has agreed to provide ADR services to the parties. The parties may select any provider available in the community including Office of Dispute Resolution (ODR). ODR offers moderately priced mediation and other ADR services. ODR can be scheduled at www.ColoradoODR.org or call 720-625-5940.

4. If no stipulated plan is submitted within 42 days of the case being at issue, the Court-ordered plan shall be that the parties must participate in mediation with ODR no later than 63 days prior to the trial date.

5. Failure to comply with this Order may result in sanctions including, but not limited to, loss of trial date.

-3-

6. The parties must certify in the proposed Trial Management Order (due 28 days before trial) that they have complied with the Stipulated Plan Regarding Settlement or with ODR pursuant to paragraph 3 above.

7. Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

BY THE COURT:
ASSIGNED JUDGE

-4-

| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>Arapahoe County Justice Center<br>7325 S. Potomac<br>Centennial, CO  80112 | DATE FILED: October 27, 2020 9:06 AM<br>CASE NUMBER: 2020CV32078 |
|---|---|
| **Plaintiff(s):** USIC LOCATING SERVICES, LLC<br>v. | **Case Number:** 2020CV32078 |
| **Defendant(s):** PROJECT RESOURCES GROUP, INC. | **Division:** 21 |
| **DISPOSITIVE MOTIONS PROCEDURE ORDER – Rules 12 and 56** | |

**NOTE: The Court instructs plaintiff's counsel (or the party if unrepresented) to mail a copy of this order to all defendants within seven (7) days of receipt.**

1. **Dispositive Motions Filed Prior to Initial Case Management Conference:** Motions to dismiss pursuant to C.R.C.P. 12 and 56 <u>must</u> comply with the following procedure:[1]

   (a)  <u>In the initial section of the movant's brief entitled "Undisputed Material Facts,"</u> the movant shall set forth in simple, declarative sentences, *separately numbered and paragraphed*, each <u>material</u> fact (one fact per numbered paragraph) which the movant asserts is not in dispute and which supports movant's argument on dismissal or summary judgment.  Each fact must be accompanied by a specific reference to material in the Court record, or to a pleading or material attached to the brief.  References must be to a specific paragraph or page, not to documents in general.

   (b)  <u>In the initial section of the respondent's brief entitled "Response to Undisputed Material Facts,"</u> and in separately numbered paragraphs which correspond to the movant's paragraphs, the respondent must state whether each fact identified by the movant is "admitted" or "denied."  Any denial shall be accompanied by a *brief* factual explanation of the reason(s) for the denial and a specific reference to material in the Court record, or to material attached to the brief, which supports the denial.  References must be to a specific paragraph or page, not to documents in general.

   (c)  <u>If the respondent asserts that additional issues of fact exist</u> upon which the movant's Motion should be denied, the respondent shall follow the same procedure as set forth in ¶ 3(a) above regarding these additional factual issues in a <u>section of its brief entitled "Additional Material Facts."</u>

   (d)  If the movant files a Reply brief and/or disputes the additional factual issues set forth by respondent, the movant shall address the factual issues as follows:

---

[1] 1/7/19 ed.

(1)    In a separate section entitled "Reply to Undisputed Material Facts," the movant will reply only to the separately numbered paragraphs which the respondent has denied, accompanied by a specific reference to material in the Court record, or to material attached to the brief, which supports the position.

(2)    In a separate section entitled "Response to Additional Material Facts," the movant will respond in separately numbered paragraphs which correspond to the respondent's "Additional Material Facts," accompanied by a specific reference to material in the Court record, or to material attached to the brief, which supports the position.

(e)  Failure to follow these procedures may result in the rejection of the brief requiring resubmittal, or in the denial or granting of the Motion, or other relief.

By Order of the Court on October 27, 2020.

_____
John L. Wheeler
District Court Judge

Cc:    All parties

2